# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MISSOURI
# EASTERN DIVISION

| | | |
|---|---|---|
| AMDOCS, INC. <br> a corporation, | ) <br> ) <br> ) | |
| Plaintiff, | ) <br> ) | |
| v. | ) <br> ) | Case No. 4:16-cv-00323-HEA |
| MICHAL BAR, | ) <br> ) <br> ) | |
| Defendant. | ) | |

## OPINION, MEMORANDUM AND ORDER

This matter is before the Court on Defendant Michal Bar's Motion to Dismiss Plaintiff Amdocs, Inc.'s Complaint for Lack of Personal Jurisdiction. Having reviewed and considered the pleadings, affidavits, declarations, briefs, and the record as a whole, the Court grants Defendant's Motion for the reasons set forth below.

## BACKGROUND[1]

Plaintiff Amdocs, Inc. ("Plaintiff" or "Amdocs") is a corporation headquartered in Saint Louis County, Missouri, and conducts business on a nationwide basis. (Affidavit of Tricia Reisinger ("Reisinger Aff."), ¶ 3). Amdocs employs over four hundred employees in Saint Louis County and maintains a substantial presence there. (*Id.*). Amdocs is a computer software and services company that sells and provides communications, wireless, pre-paid wireless media, and entertainment service providers with large scale billing and customer management services and systems, including comprehensive business support software systems and operational support software. (Reisinger Aff., ¶ 7).

---

[1] The Court's recitation of facts is gathered from the pleadings, affidavits, and declarations submitted by the parties and in no way relieves the parties of necessary proof thereof in future proceedings.

1

Defendant Michal Bar ("Defendant" or "Bar") is an Israeli national who worked as an executive-level employee for Amdocs. (Affidavit of Michal Bar ("Bar Aff."), ¶ 5; Petition, ¶ 33). At Amdocs, Bar worked extensively with Amdocs' high-value Comcast account. (Petition, ¶ 33). In October 2015, Defendant attended Amdocs Annual Leadership Forum, during which substantial strategic plans and objectives for Amdocs were discussed. (Petition, ¶ 44). Bar learned about Amdocs' confidential information and trade secrets at this Forum. (*Id.*).

As an employee for Amdocs, Defendant Bar had tenuous contacts with the State of Missouri. Bar worked with Amdocs employees in Missouri who coordinated her relocation and onboarding process when she first began working for Amdocs. (Reisinger Aff., ¶ 14 and Exhibit 3 thereto). Bar corresponded directly with Laura Menner, an Amdocs employee located in Missouri, for assistance during the visa and immigration process, in addition to direct deposit and other information regarding the relocation and benefits for Bar's husband and children. (Reisinger Aff., ¶ 15 and Exhibit 4 thereto). Defendant Bar used Amdocs' human resources function located in Missouri to sponsor her for a green card. (Reisinger Aff., ¶ 18). In addition to the relocation, immigration, and onboarding process, Bar communicated with Amdocs in Missouri in the normal course of her business. (Reisinger Aff., ¶ 20). Bar corresponded with Missouri employees to maintain visa status for an Amdocs employee working in the same office as her (*Id.*); she also worked with a Missouri employee with regard to a position she held while working for Amdocs (Reisinger Aff., ¶ 21 and Exhibit 11 thereto).

As a condition of her employment, Bar accepted an Employment Agreement in which she agreed to protect Amdocs' confidential information and refrain from competing with Amdocs for one year after her employment ended. (Petition, ¶ 29). The Employment Agreement contained a valid Missouri choice of law clause (Exhibit 1 to Plaintiff's Petition, ¶ 12), but it did not select

Missouri as the forum for disputes. Defendant signed and dated the Employment Agreement on July 1, 2011 (Exhibit 1 to Petition and Reisinger Aff.), then forwarded it to Amdocs in Missouri where it was finally accepted and signed by a Missouri employee on July 25, 2011 (Reisinger Aff., ¶¶ 12–13).

Before executing the Employment Agreement, Bar first signed a Summary of Relocation Terms ("Relocation Agreement") with Amdocs which set forth the terms of Bar's proposed relocation to work for Amdocs in the United States. (Reisinger Aff., ¶ 8). The Relocation Agreement required that Bar execute the Employment Agreement explained above. (*Id*. and Exhibit 9 thereto). Particularly important for this dispute, the Relocation Agreement mandated that the Employment Agreement would be finally accepted and signed by Amdocs in Missouri to become effective. (*Id*.). Thus, by the terms of the Relocation Agreement, Defendant Bar executed the Employment Agreement when it was finally received, signed, and accepted by Amdocs in Saint Louis County, Missouri. (Reisinger Aff., ¶ 12).

In October 2015, Defendant attended the Amdocs Annual Leadership Forum, during which she learned about Amdocs' substantial strategic plans, future objectives, and other confidential information and trade secrets. (Petition, ¶ 44). After returning from the Forum, Bar voluntarily resigned from her employment with Amdocs and did not inform Amdocs that she had accepted employment with a direct competitor, Ericsson, Inc. ("Ericsson"). (Petition, ¶ 45; Bar Aff., ¶ 28). Whether Bar's employment with Ericsson violates the Amdocs Employment Agreement is the subject of the present dispute between Plaintiff Amdocs and Defendant Michal Bar.

**ANALYSIS**

The parties contest whether this Court may properly exercise jurisdiction over the Defendant. As the non-moving party, Amdocs "need only make a prima facie showing of jurisdiction." *Dakota Indus., Inc. v. Dakota Sportswear, Inc.*, 946 F.2d 1384, 1387 (8th Cir. 1991). "[T]he evidentiary showing required at the prima facie stage is minimal." *K-V Pharm. Co. v. J. Uriach & CIA, S.A.*, 648 F.3d 588, 592 (8th Cir. 2011) (quoting *Johnson v. Arden*, 614 F.3d 785, 794 (8th Cir. 2010)). The Court must view the evidence in the light most favorable to the non-moving party and resolve all factual conflicts in its favor. *Digi-Tel Holdings, Inc. v. Proteq Telecomm. (PTE), Ltd.*, 89 F.3d 519, 522 (8th Cir. 1996).

In a diversity case, personal jurisdiction exists "to the extent permitted by the long-arm statute of the forum state and by the Due Process Clause." *K-V Pharm. Co.*, 648 F.3d at 592 (quoting *Dever v. Hentzen Coatings, Inc.*, 380 F.3d 1070, 1072 (8th Cir. 2004)). Thus, this Court must conduct a two-step analysis to determine whether it may properly exercise jurisdiction over Defendant Bar. First, jurisdiction under the Missouri long-arm statute is considered; second, jurisdiction must be proper under the Due Process Clause of the Constitution. Jurisdiction must be proper at both stages of the analysis.

### 1. The Missouri Long-Arm Statute

Missouri's long-arm statute provides:

1. Any person or firm, whether or not a citizen or resident of this state, or any corporation, who in person or through an agent does any of the acts enumerated in this section, thereby submits such person, firm, or corporation, and, if an individual, his personal representative, to the jurisdiction of the courts of this state as to any cause of action arising from the doing of any of such acts:

(1) The transaction of any business within this state;

(2) The making of any contract within this state;

> (3) The commission of a tortious act within this state; . . .
>
> 3. Only causes of action arising from such acts enumerated in this section may be asserted against a defendant in an action in which jurisdiction over him is based upon this section.

Mo. Rev. Stat. § 506.500. In Missouri, long-arm jurisdiction extends over non-resident defendants "to the extent possible under the Due Process Clause." *Insituform Techs., Inc. v. Reynolds, Inc.*, 398 F. Supp. 2d 1058, 1063 (E.D. Mo. 2005) (citing *Moog World Trade Corp. v. Bancomer*, 90 F.3d 1382, 1384 (8th Cir. 1996)). "Missouri liberally construes the provisions of its long-arm statute in order to exercise its jurisdiction to the fullest extent permitted by the Due Process Clause, within the specific categories enumerated in the statute." *Anheuser-Busch, Inc. v. City Merch.*, 176 F. Supp. 2d 951, 955 (E.D. Mo. 2001). Viewing the facts in the light most favorable to Amdocs, the Court finds that Missouri's long-arm statute permits the exercise of personal jurisdiction over Bar.

Amdocs argues Bar falls under Missouri's long-arm jurisdiction because Bar entered into a contract in Missouri, transacted business in Missouri, and committed a tortious act in Missouri.

The Court finds that Bar entered into a contract in Missouri and thus falls within reach of the long-arm statute. Under Missouri law, a contract is entered into where the last act occurred that creates the contract. *Krusen v. Maverick Transp.*, 208 S.W.3d 339, 343–44 (Mo. App. 2006). "A contract is made in Missouri if the final act which gives rise to a binding agreement occurs within this state." *Angelica Corp. v. Gallery Mfg. Corp.*, 904 F. Supp. 993, 996 n.1 (E.D. Mo. 1995) (noting that acceptance was the final act giving rise to the binding agreement).

Affording Amdocs the benefit of all reasonable inferences, Defendant Bar entered into a contract in Missouri. Bar was sent a contract from Missouri (Reisinger Aff., ¶ 10), asked to return the contract to Missouri (*Id*.), and in fact forwarded the signed contract to Missouri, where

it was finally accepted and signed by Amdocs (Reisinger Aff., ¶ 12). Thus, final acceptance of the Employment Agreement occurred in Missouri. Furthermore, it is well-settled law in this state that the parties to a contract may agree to the terms of offer and acceptance. *Cal Caulfield & Co., Inc. v. City of Belton*, 687, S.W.2d 207, 209 (Mo. App. 1984) ("if the offer prescribes the mode of acceptance, that limitation will be honored"). "[T]he mode of acceptance limits the manner in which the offer can be accepted." *L.B. v. State Comm. of Psychologists*, 912 S.W.2d 611, 619 (Mo. App. 1995). Here, before ever executing the Employment Agreement, Bar entered into a Relocation Agreement with Amdocs. (Reisinger Aff., ¶ 8). The Relocation Agreement expressly stated that acceptance of the Employment Agreement would occur only after Bar sent the signed Employment Agreement to Amdocs in Missouri for final acceptance. (*Id*. and Exhibit 9 thereto). Therefore, by operation of the valid Relocation Agreement, the parties entered into the Employment Agreement in Missouri.

The Court finds that Bar made a contract in Missouri, so the Missouri long-arm statute confers jurisdiction over Defendant Bar.[2]

### 2. Constitutional Due Process

Because the long-arm statute applies, the Court next determines whether asserting personal jurisdiction over Defendant Bar satisfies constitutional due process. *K-V Pharm. Co.*, 648 F.3d at 592. Due process requires the defendant to have "certain minimum contacts with [the forum state] such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945). Specific jurisdiction exists where a non-resident defendant has contacts with the forum state such that he

---

[2] Because the Court has determined that Bar had sufficient contacts with Missouri under the contract prong of the long-arm statute, the Court does not need to consider whether the defendant transacted business in Missouri or committed a tortious act within the state. *Anheuser-Busch, Inc. v. All Sports Arena Amusement, Inc.*, 244 F. Supp. 2d 1015, 1019 n.3 (E.D. Mo. 2002).

"should reasonably anticipate being haled into court there." *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980). A non-resident defendant has sufficient minimum contacts with a forum state when he purposefully avails himself of the benefits and laws of that state. *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 474–77 (1985).

The Eighth Circuit has established a convenient five-factor test (the "*Land-O-Nod* factors") for evaluating the exercise of personal jurisdiction under the Due Process Clause. *Land-O-Nod Co. v. Bassett Furniture Indus., Inc.*, 708 F.2d 1338, 1340 (8th Cir. 1983).

> In this circuit, the [minimum contacts] standard has devolved into a consideration of five factors: (1) the nature and quality of the contacts with the forum state; (2) the quantity of the contacts with the forum state; (3) the relation of the cause of action to the contacts; (4) the interest of the forum state in providing a forum for its residents; and (5) the convenience of the parties.

*Id*. The first three factors are given primary consideration; the last two factors are of secondary importance and are non-determinative. *Aylward v. Fleet Bank*, 122 F.3d 616, 618 (8th Cir. 1997) (citations omitted). "We must not lose sight of 'the central concern of the inquiry' which is 'the relationship among the defendant, the forum, and the litigation.'" *Land-O-Nod Co.*, 708 F.2d at 1340 (quoting *Shaffer v. Heitner*, 433 U.S. 186, 204 (1977)).

Even viewing the facts in the light most favorable to Amdocs, the Court finds that the Due Process Clause prevents the Court from exercising personal jurisdiction over Bar. Throughout the course of her employment, Defendant Bar had very limited contacts with the State of Missouri such that she could not "reasonably anticipate being haled into court there." *World-Wide Volkswagen Corp.*, 444 U.S. at 297.

The nature, quality, and quantity of Bar's contacts with Missouri are insufficient to confer jurisdiction. Although the Defendant never physically visited the State of Missouri (Bar Aff., ¶¶ 7, 14), that does not end the minimum contacts inquiry. In Eighth Circuit courts,

"minimum contacts required by due process need not include any physical presence in the State." *Dakota Indus., Inc. v. Ever Best Ltd.*, 28 F.3d 910, 915 (8th Cir. 1994) (citing *Burger King*, 471 U.S. at 476). But even Bar's non-physical contacts with Amdocs in Missouri were rare, fleeting, unsubstantial, and unrelated to her substantive job responsibilities. Besides executing a Relocation Agreement and Employment Agreement in Missouri with a Missouri choice-of-law clause, Bar had only a few contacts with the state—email correspondence with Amdocs' Human Resources Department concerning onboarding, immigration, visa status, and payment. (Reisinger Aff., ¶¶ 10–21). The Eighth Circuit has held such contacts insufficient to confer jurisdiction over a non-resident defendant.

Recently in 2011, the Eighth Circuit refused to confer personal jurisdiction under similar facts. *Viasystems, Inc. v. EBM-Papst St. Georgen GmbH & Co., KG*, 646 F.3d 589, 594 (8th Cir. 2011). There, a Missouri-based corporation sued a German corporation in Missouri. *Id*. at 591. The German corporation had tenuous contacts with the State of Missouri; it merely "sent several e-mails, made phone calls, and made a partial payment to [the Missouri-based corporation] in Missouri . . ." *Id*. at 593. The court held these contacts did not "constitute a 'deliberate' and 'substantial connection' with the state such that [the German corporation] could 'reasonably anticipate being haled into court there.'" *Id*. at 594 (quoting *World-Wide Volkswagen Corp.*, 444 U.S. at 297). "Indeed, these isolated connections are just the sort of random, fortuitous, and attenuated contacts that cannot justify the exercise of personal jurisdiction." *Id*.

In *Digi-Tel Holdings, Inc. v. Proteq Telecommunications (PTE), Inc.*, the Eighth Circuit again refused to confer personal jurisdiction over a non-resident defendant. 89 F.3d 519, 523 (8th Cir. 1996). The facts in that case were strikingly similar to those in this matter. There, the non-resident defendant "sent numerous letters and faxes and made several telephone calls to [the

forum state, Minnesota,] in connection with the . . . contract." *Id*. The contract at issue contained a Minnesota choice-of-law provision, and the contract was entered into in Minnesota. *Id*. at 523, 523 n.5. The Eighth Circuit was unconvinced by the choice-of-law provision, the contract's execution in Minnesota, and the other contacts. *Id*. "[A]lthough a choice-of-law provision may be considered for jurisdictional purposes . . . and the 'reasonable foreseeability of possible litigation there,' it is insufficient in itself to confer jurisdiction." *Id*. (citation omitted) (quoting *Burger King*, 471 U.S. at 482). Even though the contract was deemed accepted in Minnesota, the court pointed out that "the United States Supreme Court long ago rejected the notion that personal jurisdiction might turn on 'mechanical' tests or on 'conceptualistic . . . theories of the place of contracting or of performance.'" *Id*. at 523 n.5 (quoting *Burger King*, 471 U.S. at 478). Thus, despite the numerous letters, faxes, telephone calls, choice-of-law provision, and contract execution in Minnesota, the court *still* held "these contacts do not create a 'substantial connection' to Minnesota sufficient to subject [the non-resident defendant] to personal jurisdiction in the state." *Id*. at 523.

The Court finds the reasoning of both *Viasystems* and *Digi-Tel* persuasive, although the facts in this case more closely resemble *Digi-Tel*. Like the *Digi-Tel* plaintiff, here Amdocs identifies as "substantial contacts" that the Employment Contract was executed in Missouri with a Missouri choice-of-law clause. The Eighth Circuit, however, found such contacts do not create a "substantial connection" sufficient to confer personal jurisdiction, even in conjunction with other non-physical contacts. *Digi-Tel Holdings, Inc.*, 89 F.3d at 523. In addition to Bar's contractual relationship with Amdocs in Missouri, Bar communicated with Amdocs in Missouri. (Reisinger Aff., ¶¶ 10–18). But these communications never occurred in-person, only via email. (Amdocs' Response, PP. 5–6). Most telling is the fact that Bar worked for Amdocs for over four

years, yet Amdocs can only identify four instances of Bar's "correspondence" (i.e. email conversations) with Amdocs in Missouri—all of which concerned human resources issues unrelated to Bar's substantive job responsibilities. (*Id.*). Thus, the nature, quality, and quantity of Bar's contacts with Missouri do not support the conferral of personal jurisdiction over the Defendant. Her tenuous contacts with Missouri were not deliberate, nor were they substantial enough that Defendant Bar could have "reasonably anticipate[d] being haled into court there." *World-Wide Volkswagen Corp.*, 444 U.S. at 297. The Eighth Circuit's language is particularly applicable here: "[T]hese isolated connections are just the sort of random, fortuitous, and attenuated contacts that cannot justify the exercise of personal jurisdiction." *Viasystems, Inc.*, 646 F.3d at 594. Therefore, the Court refuses to exercise personal jurisdiction over Defendant Bar.

The last two *Land-O-Nod* factors are of secondary importance and are non-determinative. *Aylward*, 122 F.3d at 618 (citations omitted). "We must not lose sight of 'the central concern of the inquiry' which is 'the relationship among the defendant, the forum, and the litigation.'" *Land-O-Nod Co.*, 708 F.2d at 1340 (quoting *Shaffer*, 433 U.S. at 204). The fourth factor supports conferral of personal jurisdiction over Bar because Missouri has an interest in providing a forum for its resident, Amdocs. "Missouri clearly has an interest in providing a forum to its residents . . . to resolve its grievances." *Anheuser-Busch, Inc.*, 244 F. Supp. 2d at 1021. *See also Angelica Corp. v. Gallery Mfg. Corp.*, 904 F. Supp. 993, 997 (E.D. Mo. 1995) ("Missouri has an interest in providing a forum for its resident."). The fifth factor, however, does not favor either party. Litigating in Missouri will be inconvenient for Defendant Bar who resides out-of-state, but litigating outside of Missouri would also be inconvenient for Amdocs. Since these two factors are of secondary importance and are non-determinative, the Court does not find them

persuasive enough to support the conferral of personal jurisdiction over Bar, especially given binding Eighth Circuit precedent in *Viasystems* and *Digi-Tel*.

The Court is convinced that Defendant Bar did not engage in sufficient purposeful activity in Missouri to satisfy due process. The assertion of personal jurisdiction in this case would offend traditional notions of fair play and substantial justice. The Court therefore will not exercise personal jurisdiction over Defendant Michal Bar.

## CONCLUSION

Based upon the foregoing, the Court concludes it does not have personal jurisdiction over the Defendant in this action.

Accordingly,

**IT IS HEREBY ORDERED** that Defendant Michal Bar's Motion to Dismiss Plaintiff Amdocs, Inc.'s Complaint for Lack of Personal Jurisdiction is **GRANTED**.

Dated this 1st day of December, 2016.

_____
HENRY EDWARD AUTREY
UNITED STATES DISTRICT JUDGE